**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| **SYBMOLOGY INNOVATIONS LLC,** | |
| **Plaintiff,** | **C.A. No. 1:19-cv-881-MN** |
| **v.** | |
| **GLANBIA PERFORMANCE NUTRITION (MANUFACTURING), INC. d/b/a OPTIMUM NUTRITION, INC.,** | **JURY TRIAL DEMANDED** |
| **Defendant.** | |

**DEFENDANT'S ANSWER, AFFIRMATIVE DEFENSES, AND
COUNTERCLAIMS TO PLAINTIFF'S FIRST AMENDED COMPLAINT**

Defendant Glanbia Performance Nutrition (Manufacturing), Inc. d/b/a Optimum

Nutrition, Inc. ("Glanbia") files this Answer, Affirmative Defenses, and Counterclaims to

Plaintiff Symbology Innovations LLC's ("Plaintiff" or "Symbology") First Amended Complaint

for Patent Infringement ("First Amended Complaint"). Glanbia denies the allegations and

characterizations in Plaintiff's First Amended Complaint unless expressly admitted in the

following paragraphs.

**NATURE OF THE ACTION**

1.     Glanbia admits that the First Amended Complaint purports to set forth an action

for patent infringement under the Patent Laws of the United States, 35 U.S.C. § 1, et seq., and

that Plaintiff purports to seek injunctive relief as well as damages, attorney's fees, and costs.

Glanbia further admits that a purported copy of U.S. Patent No. 8,936,190 (the "'190 Patent") is

attached to the First Amended Complaint as Exhibit A. Glanbia denies it has committed or is

committing acts of infringement and/or "profiting, in an illegal and unauthorized manner and

without authorization and/or of the consent from Symbology" such that Plaintiff is entitled to any relief from Glanbia. Glanbia denies any remaining allegations in Paragraph 1 of the First Amended Complaint.

## THE PARTIES

2.      Glanbia is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 2 of the First Amended Complaint and, on that basis, denies all such allegations.

3.      Glanbia admits it is a corporation organized under the laws of Delaware, having a place of business at 3500 Lacey Rd., Ste. 1200, Downers Grove, Illinois 60515. Glanbia further admits that it may be served with process at Corporate Creations Network Inc., 3411 Silverside Road, Tatnall Building, Ste. 104, Wilmington, DE 19810.

## JURISDICTION AND VENUE

4.      Glanbia admits that the First Amended Complaint purports to set forth an action for infringement under the Patent Laws of the United States, 35 U.S.C. § 1, et seq., and that this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a) because Plaintiff has alleged infringement of a patent, but Glanbia denies it has committed or is committing acts of infringement and denies Plaintiff is entitled to any relief. Glanbia denies any remaining allegations in Paragraph 4 of the First Amended Complaint.

5.      Glanbia does not contest whether personal jurisdiction over it properly lies in this District in this action, or that it conducts business in the State of Delaware. Glanbia denies it has committed or is committing acts of infringement within the State of Delaware or in this District and, on that basis, denies the remaining allegations of Paragraph 5 of the First Amended Complaint.

6.      Glanbia does not contest whether personal jurisdiction over it properly lies in this District in this action, or that it conducts business in the State of Delaware. Glanbia denies it has committed or is committing acts of infringement within the State of Delaware or in this District and, on that basis, denies the remaining allegations of Paragraph 6 of the First Amended Complaint.

7.      Glanbia does not contest that venue may be proper in this District in this action, but denies that venue is convenient as to Glanbia in this case. Glanbia denies the remaining allegations of Paragraph 7 of the First Amended Complaint.

## [ALLEGED] FACTUAL ALLEGATIONS

8.      Glanbia admits that the '190 Patent speaks for itself but denies any characterizations inconsistent therewith. Glanbia denies that "the combination of steps and/or functionalities—as embodied in claim 1" resulted in any "enhancement or improvement." Glanbia denies any remaining allegations in Paragraph 8 of the First Amended Complaint.

9.      Glanbia admits that the purported copy of the '190 Patent that is attached to the First Amended Complaint as Exhibit A indicates that it issued on January 20, 2015, and is entitled "System and method for presenting information about an object on a portable electronic device." Glanbia is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 9 of the First Amended Complaint and, on that basis, denies all such allegations.

10.     Glanbia is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 10 of the First Amended Complaint and, on that basis, denies all such allegations.

11. Glanbia admits that the purported copy of the '190 Patent that is attached to the First Amended Complaint as Exhibit A appears to contain three independent claims and 17 dependent claims. Glanbia denies the remaining allegations of Paragraph 11 of the First Amended Complaint.

12. Glanbia denies that the claims of the '190 Patent constitute inventions or patent subject matter. Glanbia is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 12 of the First Amended Complaint and, on that basis, denies all such allegations.

## COUNT I
## [ALLEGED] INFRINGEMENT OF THE '190 PATENT

13. Glanbia incorporates by reference its responses in Paragraphs 1-12 above as if fully set forth herein.

14. Glanbia denies the allegations in Paragraph 14 of the First Amended Complaint.

15. Glanbia admits that it has had knowledge of the '190 Patent since the time it was served with the First Amended Complaint. Glanbia denies the remaining allegations in Paragraph 15 of the First Amended Complaint.

16. Glanbia denies the allegations in Paragraph 16 of the First Amended Complaint.

17. Glanbia admits that a Quick Response (QR) code has appeared on some of its product packaging. Glanbia denies that it has committed or is committing acts of infringement in this District or elsewhere and, on that basis, denies any remaining allegations in Paragraph 17 of the First Amended Complaint.

18. Glanbia incorporates its admissions, averments, and denials in Paragraph 17 above as if set forth fully herein. Glanbia denies that it has committed or is committing acts of

4

infringement in this District or elsewhere and, on that basis, denies any remaining allegations in Paragraph 18 of the First Amended Complaint.

19.     Glanbia incorporates its admissions, averments, and denials in Paragraph 17 above as if set forth fully herein. Glanbia denies that it has committed or is committing acts of infringement in this District or elsewhere and, on that basis, denies any remaining allegations in Paragraph 19 of the First Amended Complaint.

20.     Glanbia incorporates its admissions, averments, and denials in Paragraph 17 above as if set forth fully herein. Glanbia denies that it has committed or is committing acts of infringement in this District or elsewhere and, on that basis, denies any remaining allegations in Paragraph 20 of the First Amended Complaint.

21.     Glanbia incorporates its admissions, averments, and denials in Paragraph 17 above as if set forth fully herein. Glanbia denies that it has committed or is committing acts of infringement in this District or elsewhere and, on that basis, denies any remaining allegations in Paragraph 21 of the First Amended Complaint.

22.     Glanbia denies the allegations in Paragraph 22 of the First Amended Complaint.

23.     Glanbia denies the allegations in Paragraph 23 of the First Amended Complaint.

24.     Glanbia denies the allegations in Paragraph 24 of the First Amended Complaint.

25.     Glanbia denies the allegations in Paragraph 25 of the First Amended Complaint.

## [PLAINTIFF'S] DEMAND FOR JURY TRIAL

26.     Glanbia is not required to provide a response to Plaintiff's request for a trial by jury.

## [PLAINTIFF'S] PRAYER FOR RELIEF

Glanbia denies that Plaintiff is entitled to any relief from Glanbia and denies all the allegations contained in Paragraphs a-f of Plaintiff's Prayer for Relief.

## AFFIRMATIVE DEFENSES

Glanbia's Affirmative Defenses are listed below. Glanbia reserves the right to amend its answer to add additional Affirmative Defenses consistent with the facts discovered in this action.

### FIRST AFFIRMATIVE DEFENSE

Glanbia has not infringed and does not infringe, under any theory of infringement (including directly (whether individually or jointly) or indirectly (whether contributorily or by inducement)), any valid, enforceable claim of the '190 Patent.

### SECOND AFFIRMATIVE DEFENSE

Each asserted claim of the '190 Patent is invalid for failure to comply with one or more of the requirements of the United States Code, Title 35, including without limitation, 35 U.S.C. §§ 101, 102, 103, and 112, and the rules, regulations, and laws pertaining thereto.

### THIRD AFFIRMATIVE DEFENSE

Plaintiff's attempted enforcement of the '190 Patent against Glanbia is barred by the doctrine of inequitable conduct.

### FOURTH AFFIRMATIVE DEFENSE

To the extent that Plaintiff and any predecessors in interest to any of the '190 Patent failed to properly mark any of their relevant products or materials as required by 35 U.S.C. § 287, or otherwise give proper notice that Glanbia's actions allegedly infringe the '190 Patent, Glanbia is not liable to Plaintiff for the acts alleged to have been performed before it received actual notice that it was allegedly infringing the '190 Patent.

### FIFTH AFFIRMATIVE DEFENSE

To the extent that Plaintiff asserts that Glanbia indirectly infringes, either by contributory infringement or inducement of infringement, Glanbia is not liable to Plaintiff for the acts alleged to have been performed before Glanbia knew that its actions would cause indirect infringement.

## SIXTH AFFIRMATIVE DEFENSE

Plaintiff's attempted enforcement of the '190 Patent against Glanbia is barred by one or more of the equitable doctrines of estoppel, acquiescence, waiver, and unclean hands.

## SEVENTH AFFIRMATIVE DEFENSE

The claims of the '190 Patent are not entitled to a scope sufficient to encompass any system employed or process practiced by Glanbia.

## EIGHTH AFFIRMATIVE DEFENSE

Plaintiff's First Amended Complaint fails to state a claim upon which relief can be granted because, among other things, Plaintiff has not stated a plausible allegation that Glanbia makes, uses, or sells each claimed element of any asserted claim, or that Glanbia directs or controls another entity to make, use, or sell any element that is not made, used, or sold by Glanbia.

## NINTH AFFIRMATIVE DEFENSE

To the extent Plaintiff contends that it alleges a claim for indirect infringement (whether by inducement or contributorily), Plaintiff has failed to state a claim upon which relief can be granted.

## TENTH AFFIRMATIVE DEFENSE

Plaintiff's First Amended Complaint fails to state a claim upon which relief can be granted because the '190 Patent does not claim patentable subject matter under 35 U.S.C. § 101.

## ELEVENTH AFFIRMATIVE DEFENSE

Plaintiff's First Amended Complaint fails to state a claim upon which relief can be granted because, among other things, Plaintiff has not stated a plausible allegation that any method employed by Glanbia: (1) captures a digital image; (2) detects symbology associated

with the digital image; (3) decodes the symbology to obtain a decode string; (4) sends the decode string to a remote server for processing; (5) receives information about the object from the remote server wherein the information is based on the decode string of the object; and/or (6) displays the information on a display device associated with the electronic device.

## GLANBIA'S COUNTERCLAIMS

For its counterclaims against Plaintiff Symbology Innovations, LLC ("Symbology"), Counterclaim Plaintiff Glanbia Performance Nutrition (Manufacturing), Inc. d/b/a Optimum Nutrition, Inc. ("Glanbia") alleges as follows:

## PARTIES

1.      Counterclaim Plaintiff Glanbia is a company organized and existing under the laws of the State of Delaware, with a place of business located at 3500 Lacey Rd., Ste. 1200, Downers Grove, Illinois 60515.

2.      Upon information and belief based solely on Paragraph 2 of the First Amended Complaint as pled by Plaintiff, Counterclaim Defendant Symbology is a limited liability company organized and existing under the laws of the State of Texas, and maintains its principal place of business at 1400 Preston Road, Suite 400, Plano, Texas 75093.

## JURISDICTION

3.      Glanbia incorporates by reference Paragraphs 1–2 above.

4.      These counterclaims arise under the patent laws of the United States, Title 35, United States Code. The jurisdiction of this Court is proper under at least 35 U.S.C. § 271 et seq., and 28 U.S.C. §§ 1331, 1338, 1367, and 2201–02.

5.      Symbology has consented to the personal jurisdiction of this Court at least by commencing its action for patent infringement in this District, as set forth in its First Amended Complaint.

6.      Based solely on Symbology's filing of this action, venue is proper, though not necessarily convenient, in this District pursuant at least 28 U.S.C. §§ 1391 and 1400.

## COUNT I
## DECLARATION REGARDING NON-INFRINGEMENT

7.      Glanbia incorporates by reference Paragraphs 1–6 above.

8.      Based on Symbology's filing of this action and at least Glanbia's First Affirmative Defense, an actual controversy has arisen and now exists between the parties as to whether Glanbia infringes U.S. Patent No. 8,936,190 (the "'190 Patent").

9.      Glanbia does not infringe at least Claim 1 of the '190 Patent because, among other things, it does not "use" or "test" any method or system that: (i) captures a digital image, (ii) detects symbology associated with the digital image, (iii) decodes the symbology to obtain a decode string, (iv) sends the decode string to a remote server for processing, (v) receives information about the digital image from the remote server wherein the information is based on the decode string, and/or (vi) displays the information on a display device associated with the electronic device.

10.      Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 et seq., Glanbia requests a declaration by the Court that Glanbia has not infringed and does not infringe any claim of the '190 Patent under any theory (including directly (whether individually or jointly) or indirectly (whether contributorily or by inducement)).

## COUNT II
## DECLARATION REGARDING INVALIDITY

11.      Glanbia incorporates by reference Paragraphs 1–10 above.

12.     Based on Symbology's filing of this action and at least Glanbia's Second Affirmative Defense, an actual controversy has arisen and now exists between the parties as to the validity of the claims of the '190 Patent.

13.     The asserted claims of the '190 Patent are anticipated and/or rendered obvious by, inter alia, BarPoint.com; Neomedia's Neo Reader; Microsoft's Smart Tags; Android's Shop Savvy; Red Laser; ScanBuy; U.S. Serial No. 60/118,051; U.S. Serial No. 60/187,646; U.S. Serial No. 60/185,546; U.S. Patent Application 2008/0004978; U.S. Patent No. 6,430,554; and/or U.S. Patent No. 6,651,053.

14.     Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 et seq., Glanbia requests a declaration by the Court claims of the '190 Patent are invalid for failure to comply with one or more of the requirements of United States Code, Title 35, including without limitation, 35 U.S.C. §§ 101, 102, 103, and 112, and the rules, regulations, and laws pertaining thereto.

## COUNT III
## DECLARATION REGARDING UNENFORCEABILITY
## DUE TO INEQUITABLE CONDUCT

15.     Glanbia incorporates by reference Paragraphs 1–14 above.

16.     Based on Symbology's filing of this action and at least Glanbia's Third Affirmative Defense, an actual controversy has arisen and now exists between the parties as to the enforceability of the claims of the '190 Patent.

17.     The named inventor, Leigh Rothschild, had knowledge of material, non-cumulative prior art regarding the '190 Patent and, on information and belief, deliberately withheld the material, non-cumulative prior art from disclosure to the United States Patent and Trademark Office ("USPTO") during prosecution of the '190 Patent with the intent to deceive the examiner and the USPTO.

18.     On information and belief, representatives associated with the filing and prosecution of the applications for the '190 Patent, had knowledge of material, non-cumulative prior art regarding the '190 Patent and, on information and belief, deliberately withheld the material, non-cumulative prior art from disclosure to the USPTO with the intent to deceive the examiner and the USPTO.

19.     Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 et seq., Glanbia requests a declaration by the Court that all claims of the '190 Patent are unenforceable due to inequitable conduct because one or more of the individuals referenced above, with the intent to deceive the USPTO, failed to comply with the duty of candor to the USPTO, as set forth in 37 C.F.R. § 1.56, during prosecution of the applications that led to the issuance of the '190 Patent.

A.     **Background Facts Relating to Counterclaim of Unenforceability**

1.     **At the Time of Prosecution, Leigh Rothschild was Aware of Material, Non-Cumulative Prior Art Related to Barcode Symbology, Including His Own BarPoint System and Related Patents**

20.     On information and belief, due to his long involvement with filing and prosecuting patent applications, Mr. Rothschild is familiar with policies and practices of the USPTO and its procedures, including its duty of candor. In particular, according to his personal LinkedIn page, Mr. Rothschild:

> is an established inventor who to date has been issued more then [sic] eighty US patents and has more than 150 patents pending worldwide. Mr. Rothschild's first patent was conceived when he was 17 years of age and granted shortly thereafter.

Ex. A.

21.     Moreover, Mr. Rothschild has long been familiar with prosecuting patents in the same field as Symbology's characterization of the '190 Patent, which Symbology alleges relates

to barcode symbology, namely "Quick Response Codes (QR codes)." In an online profile, Mr.

Rothschild was quoted as saying:

> I have 60 patents—from computer servers to medical to 3D displays.
> Most of my inventions are related to technology, such as the method
> of tying QR codes to the internet….

Ex. B.

### a.   The Undisclosed BarPoint System

22.     Mr. Rothschild's involvement with barcode technology dates back almost two

decades. On information and belief, in order to make money at alleged inventing, in the late

1990s and early 2000s, Mr. Rothschild started a few businesses, including BarPoint.com.

23.     According to BarPoint.com's 2001 Annual Report filed with the SEC:

> BarPoint is an online and wireless product information and shopping
> service provider which also develops mobile device software
> applications for consumers and businesses. BarPoint's product
> information and shopping service platform utilizes patent pending
> reverse search technology to enable users to search for product
> information using unique product identifiers, including universal
> product codes, known as UPCs or barcode numbers, catalog
> numbers and SKU numbers.

Ex. C.

24.     On information and belief, Mr. Rothschild was deeply involved in the affairs of

BarPoint.com. In addition to being its founder, he served as Chairman of its Board of Directors

from 1998 through 2004. During a portion of that time he also served as its Chief Executive

Officer. *See* Ex. A.

25.     The primary technology that BarPoint.com employed involved scanning a

barcode with a handheld mobile device and transmitting the decoded barcode information over

the Internet in order to search for product information (the "BarPoint.com system"). According

to BarPoint.com's 1999 Annual Report filed with the SEC:

> BarPoint  has  developed  and  recently  launched  a  comparative

shopping and consumer information Internet site utilizing proprietary reverse search technology that enables consumers to search the Internet for product-specific information using universal product codes, known as UPCs or barcode numbers…. The BarPoint service can be accessed from a desktop computer or a wide variety of Internet-enabled handheld mobile devices, such as personal digital assistants (PDAs), interactive pagers and cell phones. By typing or scanning the barcode number that manufacturers attach to their products, consumers gain access to a variety of information gathered by BarPoint on the specific product….

* * *

On December 6, 1999, we launched a preview version of our website, www.barpoint.com, which features a patent-pending search engine and software technology that allows consumers to use the standard UPC barcode number that appears on what we believe to be more than 100 million retail items to search for product-specific information from and shop for products on the Internet.

* * *

The BarPoint technology can be accessed via the Internet at www.barpoint.com from desktops or handheld wireless devices. It is presently available on a variety of hand-held and wireless devices including the Palm VII from 3COM/Palm Computing, interactive pagers such as those from Research In Motion, and the SPT 1500, a Palm VII with a built-in scanning device, manufactured by Symbol Technologies.

* * *

The BarPoint service is available through accessing www.barpoint.com through which UPC barcode number searches can be executed by simply typing or scanning in a UPC barcode number.

*See* Ex. D.

26. The BarPoint system, publicly known, offered for sale, and used around 1999, is substantially similar to the alleged infringing activity of the '190 Patent as characterized by Symbology in its First Amended Complaint:

The invention claimed in the [Asserted Patent] comprises a method for enabling a portable electronic device to retrieve information about an object when the object's symbology, is detected.

*See, e.g.*, D.I. 6, ¶ 12.

27.    As shown in the claim chart attached hereto as Exhibit E, the BarPoint system anticipates and/or renders obvious each and every element of Claim 1 of the '190 Patent under Symbology's characterization of the '190 Patent's scope, and thus is material and not cumulative to the information already of record during the prosecution of the '190 Patent and related applications.

b.    **The Undisclosed Rothschild Patents**

28.    In addition to his firsthand involvement with BarPoint.com, Mr. Rothschild was identified as the sole named inventor for at least three provisional applications that disclosed the BarPoint.com system, including:

(a) U.S. Serial No. 60/118,051 ("'051 provisional application"), filed February 1, 1999, and entitled "Interactive Method for Investigating Products";

(b) U.S. Serial No. 60/187,646 ("'646 provisional application"), filed March 8, 2000, and entitled "Interactive System for Investigating Products on a Network Through a Mobile Device"; and

(c) U.S. Serial No. 60/185,546 ("'546 provisional application"), filed February 28, 2000, and entitled "Method of Verifying Barcode/UPC Numbers or Other Symbologies and Linking Such Numbers to Information on a Global Computer Network."

29.    On information and belief, the '051 provisional application became publicly available, such as through the USPTO's public PAIR website, more than one year prior to the September 15, 2010 earliest effective filing date of the '190 Patent, because later patent applications published and/or granted claimed priority to them. *See* Manual for Patent Examination Procedure (MPEP) 103 (citing 37 CFR 1.14(a)(1)(iv)-(vi)). The '051 provisional application is attached hereto as Exhibit F.

30.    The following disclosures in the '051 provisional application confirm that the BarPoint system was offered for sale and publicly used prior to the filing dates of the '051 provisional application:

•      The '051 provisional application provides a printout from www.barpoint.com entitled "Advertising Barcode," dated January 20, 1999, and shows:

> You no longer need to put long URL web addresses in your ads. **A simple BarPoint barcode connects your ad to the internet!**

•      Another printout in the '051 provisional application from www.barpoint.com entitled "Advertising Barcode Demo," dated January 20, 1999, shows:

> Another example is the Amazon.com barcode below. Please input this barcode to see how the technology works.



•      Another printout in the '051 provisional application from www.barpoint.com entitled "Link to Your Product's Website," dated January 20, 1999, shows:

> BarPoint.com seamlessly connects your product to the Internet. BarPoint.com makes this possible today with its ▮▮▮▮▮▮▮▮technology. The current barcode (UPC) that is on your product is the gateway to the internet. Without changing or reprinting your barcode (UPC) a customer can enter (or scan) the barcode and instantly be taken to your website, or instantly email anyone in your company.
>
> It would be impossible for you to list every email address or every specific website that your company offers for its customers. With BarPoint.com this is not necessary. All your customer need do is enter your current barcode (UPC) and they will automatically be given a choice of your websites and email addresses that apply to this product.
>
> BarPoint.com is providing software support for all computers operating under Windows. (Click here to go to our software download page) Many companies (Palm Pilot, Symbol, Casio, IBM, Phillips, NEC, Everex, and many others) are now selling Portable Digital Assistants. Barcodes can either be manually input or electronically scanned with many of the scanning devices available to the consumer (Click here to see some of these devices) With millions of these devices in use customers will be inputting barcodes (UPCs) and searching for results. BarPoint.com will connect these customers to your product and internet site.

Ex. F.

31.      Based on the provisional application's disclosures and Mr. Rothschild's firsthand

involvement with BarPoint.com, it was known to Mr. Rothschild and/or the representatives

associated with the filing and prosecution of the application for the '190 Patent, that the BarPoint system described in the provisional applications was offered for sale and publicly used prior to the filing dates of the provisional applications.

32.     Mr. Rothschild's representatives subsequently filed several non-provisional applications that claim priority to the '051, '646, and '546 provisional applications, including the applications for U.S. Patent No. 6,430,554 ("'554 Patent"), which issued on August 6, 2002, and U.S. Patent No. 6,651,053 ("'053 Patent"), which issued on November 18, 2003, each of which names Mr. Rothschild as the sole inventor. These patents are attached hereto as Exhibits G and H.

33.     On June 30, 2006, Mr. Rothschild filed U.S. Patent Application 2008/0004978 ("'978 application") with the USPTO. The '978 application was published January 3, 2008, and is attached hereto as Exhibit I.

34.     The '978 application disclosed "a system and method … for identifying an article of commerce, e.g., digital media content, and downloading all or part of content related to the article of commerce to mobile devices such as portable digital media players and/or mobile phone devices" over the Internet. *Id.*, ¶¶ 0007, 0035. The '978 application further disclosed capturing a barcode and decoding the barcode in order to acquire an identification code of the article of commerce:

[0037]   The user will utilize the portable digital device **100** to identify the article of commerce. For example, if the article of commerce **310** includes a barcode **312**, the device **100** will scan the barcode **312** with the scanning module **124** and decode the barcode to acquire an identification code of the article. Alternatively, the device **100** will capture an image of the barcode using the capture module **122** and decode the barcode to acquire an identification code of the article. Furthermore, the user can also take a picture of the article of commerce via the capture module **122**. Then using standard and existing computer processing power and software solutions such as Attrasoft Image recognition software, or optical character recognition software (OCR software such as OmniPage or ReadIris) the image or name of the article of commerce is decoded and the identity of the article of commerce is resolved.

*Id.*, ¶ 0037.

35.     The '051, '646, and '546 provisional applications, the '978 application, and the '554 and '053 Patents (collectively, the "Rothschild Patents"), each anticipate and/or render obvious each and every element of Claim 1 of the '190 Patent under Symbology's characterization of the alleged infringing activity, as shown in the exemplary claim chart for the BarPoint system, the '978 application, and the '554 Patent, attached hereto as Exhibits E, J, and K, and thus the Rothschild Patents prior art is material and not cumulative to the information already of record during the prosecution of the '190 Patent and related applications.

### c.     Other Material Prior Art

36.     Mr. Rothschild noted in the '190 Patent's specification that "[s]ome applications that may be downloaded to portable electronic devices include symbology scanning and/or decoding programs [including] Neomedia's Neo Reader, Microsoft's Smart Tags, Android's Shop Savvy, Red Laser, ScanBuy, etc." Ex. L ('190 Pat., 3:42-46).

37.     Mr. Rothschild, however, indicated only that these prior art systems "scan[]" or "decode[]," but notably failed to disclose to the USPTO that these prior art systems also capture a digital image of a barcode and send decoded information (such as a URL) to a remote server to retrieve information for display (such as a web page).

38.     As shown in the claim charts attached as Exhibits M and N, the prior art systems identified in the specification, but not fully disclosed by Mr. Rothschild, anticipate and/or render obvious each and every element of Claim 1 of the '190 Patent under Symbology's characterization of the alleged infringing activity, and thus full disclosure of the prior art systems is material and not cumulative to the information already of record during the prosecution of the Asserted Patent and related applications.

> ## 2.     Leigh Rothschild Deliberately Withheld Material, Non-Cumulative Prior Art References During Prosecution of the '190 Patent and Related Applications

39.     Despite Mr. Rothschild having deep knowledge of the BarPoint system, the Rothschild Patents, and other material, non-cumulative prior art related to technology Symbology alleges the '190 Patent covers, Mr. Rothschild and/or the representatives associated with the filing and prosecution of the application for the '190 Patent did not submit or identify any prior art during the prosecution of the '190 Patent and related applications, nor did the prosecuting attorney(s) submit to the examiner a single Information Disclosure Statement (IDS) identifying any prior art.

40.     The BarPoint system, the Rothschild Patents, and the prior art systems identified in the specification, are each material to patentability of the claims of the '190 Patent and not merely cumulative over the prior art that was before the examiner.

41.     Mr. Rothschild and/or the representatives associated with the filing and prosecution of the application for the '190 Patent, knew of the BarPoint system, the Rothschild Patents, and the prior art systems identified in the specification, and, on information and belief, deliberately failed to disclose the prior art to the USPTO in connection with prosecuting the applications for the '190 Patent, with the intent to deceive the examiner and the USPTO.

42.     Had Mr. Rothschild and/or the representatives associated with the filing and prosecution of the application for the '190 Patent made the examiner aware of the BarPoint system, the Rothschild Patents, and that the prior art systems identified in the specification anticipate and/or render obvious each and every element of the independent claims of the'190 Patent under Symbology's characterization of the alleged infringing activity, the examiner would not have allowed the claims to issue.

    **3.**    **By Withholding Material, Non-Cumulative Prior Art During Prosecution of the '190 Patent, Leigh Rothschild Intended to Deceive the USPTO**

        **a.**    **Leigh Rothschild Lost His Interest in the BarPoint System and <u>Rothschild Patents in Late 2010</u>**

43.     The failure of Mr. Rothschild and/or the representatives associated with the filing and prosecution of the application for the '190 Patent to disclose the BarPoint system and the Rothschild Patents prior art, as well as other material prior art, was with the intent to deceive the USPTO.

44.     Mr. Rothschild sought and obtained the Rothschild Patents claiming an alleged invention by which a customer scans a barcode with a handheld mobile device, and transmits the decoded barcode information over the Internet in order to retrieve product information on the mobile device.

45.     Mr. Rothschild sought monetary gain through the founding of BarPoint.com by assigning the Rothschild Patents to BarPoint.com in order to commercialize the alleged inventions of the Rothschild Patents.

46.     According to SEC filings, BarPoint.com initially was not a commercial success:

> Revenue from [BarPoint.com's wireless Internet software] business was limited and decreased through 2002. In 2003, this business generated no revenue and we began searching to acquire another business…. Effective in August 2004 Mr. Rothschild resigned as a director of the Company.

Ex. O (2004 SEC Annual Report, Description of Business).

47.     On or about April 11, 2005, however, BarPoint.com sold the Rothschild Patents to NeoMedia Technologies, Inc. in exchange for a cash payment and royalties in the amount of 10% of licensing proceeds generated by NeoMedia for 10 years. *Id.* (Intellectual Property). On information and belief, NeoMedia undertook an enforcement campaign that generated royalties due under the agreement.

48.     BarPoint.com's successor-in-interest subsequently declared bankruptcy, and the Rothschild Trust, for which Mr. Rothschild was the managing member, purportedly purchased the rights to the licensing proceeds generated from the Rothschild Patents. *See* Ex. P (Settlement Agreement).[1]

49.     On information and belief, Mr. Rothschild, and/or one or more entities he controlled, received compensation for licensing proceeds from the enforcement of the Rothschild Patents. Consequently, Mr. Rothschild remained deeply familiar with the BarPoint.com system and the Rothschild Patents, including their disclosures and claims.

50.     On information and belief, Mr. Rothschild's rights to benefit from the Rothschild Patents ceased in late 2010, when he entered into a settlement agreement with NeoMedia assigning all rights in the Rothschild Patents to NeoMedia.

> **b.     Leigh Rothschild's Initial Attempt to Reclaim Technology Disclosed in BarPoint System and Other Undisclosed Prior Art was Rejected**

51.     On September 15, 2010, Mr. Rothschild filed a patent application that ultimately issued as U.S. Patent No. 7,992,773 (the "'773 Patent"), entitled "System and Method for Presenting Information about an Object on a Portable Electronic Device," attached as Exhibit Q.

---

[1] Available publicly at: https://www.sec.gov/Archives/edgar/data/1022701/ 000114420410066649/v205602_ex10-1.htm.

The '190 Patent is a continuation of the application that led to the '773 Patent and thus shares a common specification.

52.     With at least one substantial exception, the general subject matter of the '773 Patent and the '190 Patent is nearly identical to the BarPoint system and the Rothschild Patents. For example, the summary of the '773 Patent states:

> Systems and methods are provided for allowing a user to utilize a portable electronic device to retrieve information about an object in response to the portable electronic device detecting symbology, e.g., a barcode, associated with the object.

Ex. Q, 1:56-60.

53.     However, the '773 Patent's specification notes alleged problems with prior art barcode scanning applications:

> Some applications that may be downloaded to portable electronic devices include symbology scanning and/or decoding programs. Examples of applications that allow scanning include Neomedia's Neo Reader, Microsoft's Smart Tags, Android's Shop Savvy, Red Laser, ScanBuy, etc. **However, when a user wishes to scan an object, the user must then select an application on the portable electronic device that is capable of accomplishing the desired functions. Since a user may have dozens of applications loaded on his or her portable electronic device, it may be difficult to select the appropriate application for executing the scanning functions**.

*See, e.g.*, *id.*, 3:20-30 (emphasis added).

54.     In the specification, Mr. Rothschild thus proposed a solution wherein the alleged improvement over the prior art barcode scanning applications involves "one or more visual detection systems [that] are ***run in the background*** of the device, where other programs or systems are given priority with respect to processing steps over the one or more visual detection systems." *Id.*, 11:63-66 (emphasis added). "***If a background application detects*** decodable

21

symbology…the detected symbology is sent to one or more pre-selected visual detection applications for decoding and information retrieval." *Id.*, 12:19-33 (emphasis added).

55.     Notwithstanding this purportedly inventive feature, Mr. Rothschild initially attempted to prosecute independent claim 1 of the patent application that ultimately issued as the '773 Patent without this limitation and covering only that which BarPoint and other prior art barcode scanning applications disclosed.

56.     At no point during the prosecution of the '773 Patent or the continuation applications did Mr. Rothschild disclose to the USPTO the BarPoint system, the Rothschild Patents, or the full capabilities of the prior art barcode scanning applications identified in the specification.

57.     In the December 2010 Non-Final Rejection, the examiner rejected claim 1 under 35 U.S.C. 102(b) as being anticipated by Fitzpatrick, et al. (2008/0201310) ("Fitzpatrick"), which disclosed all of the limitations in the originally-drafted version of claim 1:

> With respect to claims 1, 13, and 17 Fitzpatrick discloses in paragraph 0051-
> 0052 detecting symbology associated with an object, decoding the symbology to obtain
> a decode string, sending the decode string to one or more visual detection applications
> for processing, the one or more visual detection applications residing on a portable
> electronic device, receiving a first amount of information about the object from the one
> or more visual detection applications, sending the decode string to a remote server for
> processing, receiving a second amount of information about the object from the remote
> server, combining the first amount of information with the second amount of information
> to obtain cumulative information, and displaying the cumulative information on a display
> device associated with the portable electronic device. Specifically, Fitzpatrick teaches
> in paragraph 0051, scanning a code with a mobile device and partially decoding the
> code within the mobile device. Paragraph 0052 discloses scanning a code (155) using
> a camera phone (156) and converting the resulting image to an MMS format to be sent
> via short code to a server. Once the MMS code reaches the server, the image
> information may be enhance, manipulated, and/or otherwise processed (160) so as to
> aid in determining the appropriate content. After the processing, the determined image
> content is sent back to the user's camera phone. Also refer to paragraph 0062.

*See* Ex. R ('773 Pat. File History, Dec. 27, 2010 Non-Final Rejection at 2-3).

58.     To overcome the December 2010 rejection, Mr. Rothschild narrowed claim 1 of
the '773 Patent to include the purportedly novel feature identified in the specification:

23

**Claims:**

1. (Currently Amended) A method comprising:

detecting symbology associated with an object;

decoding the symbology to obtain a decode string;

sending the decode string to one or more visual detection applications for processing, the one or more visual detection applications residing on a portable electronic device;

receiving a first amount of information about the object from the one or more visual detection applications;

sending the decode string to a remote server for processing;

receiving a second amount of information about the object from the remote server;

combining the first amount of information with the second amount of information to obtain cumulative information; and

displaying the cumulative information on a display device associated with the portable electronic device;

wherein one or more visual detection systems are configured to run in the background with respect to other systems associated with the portable electronic device, the visual detection systems comprising the one or more visual detection applications and one or more visual detection devices, the one or more visual detection devices configured to detect the symbology associated with the object.

*See* Ex. S ('773 Pat. File History, Jan. 13, 2011 Claim Amendment).

59. In the March 2011 Notice of Allowance, the examiner expressly noted that the prior art taught:

(a) detecting a symbology associated with an object;

(b) decoding the symbology to obtain a decode string;

(c) sending the decode string to a remote server for processing;

(d) receiving information from the server; and

(e) displaying the information on a display device.

*See* Ex. T ('773 Pat. File History, Mar. 28, 2011 Notice of Allowance at 2-3).

60.     In the March 2011 Notice of Allowance, the examiner confirmed that the purported "novelty" of the invention as allowed in claim 1 of the '773 Patent was the visual detection systems that run in the background and detect the symbology associated with an object:

> displayed, and e-commerce options.  Prior art additionally fails to teach wherein one or more visual detection systems are configured to run in the background with respect to other systems associated with the mobile device, wherein the visual detection systems comprise the one or more visual detection applications and one or more visual detection devices and wherein the one or more visual detection devices are configured to detect the symbology associated with the object.  Prior art fails to teach the method further including analyzing the decode string to determine a category of the object and selecting one or more appropriate applications to process the decode string when the one or more visual detection applications are not pre-selected.  Lastly, prior

*Id.* at 3.

61.     As a result of the patentee's amendment to claim 1, every independent claim of the '773 Patent includes the limitation in which a "background" visual detection system "automatically" decodes "symbology" and sends the decode string to another "visual detection application" residing on the portable device.

          **c.      Mr. Rothschild Intentionally Omitted the Limitations Found in Claim 1 of the '773 Patent During Prosecution of the '190 Patent in Order to Recapture the Scope of the BarPoint.com System He No <u>Longer Controlled</u>**

62.     Despite the purported novelty identified in the specification and by the examiner during prosecution of the parent application, Mr. Rothschild and/or the representatives associated with the filing and prosecution of the application for the '190 Patent, undertook a concerted effort to omit the limitation related to the alleged improvement that had been expressly included

in claim 1 of the '773 Patent in order to overcome the examiner's rejection based on anticipation grounds.

63.     Unlike claim 1 of the '773 Patent, the independent claims of the '190 Patent do not include the limitation that requires a "background" system that "decod[es] the symbology to obtain a decode string" and "send[s]the decode string to one or more visual detection applications for processing."

64.     On information and belief, Mr. Rothschild's goal during prosecution of the '190 Patent and related applications was to broaden the independent claims in the continuation applications to recapture the scope of the invention related to the BarPoint system that he had assigned to NeoMedia and for which, as of 2010, he no longer had rights to exploit. Mr. Rothschild would not have been able to achieve this goal if he disclosed the BarPoint system, the Rothschild Patents, and the full capabilities of the prior art barcode scanning applications identified in the specification, to the examiner during the '190 Patent's prosecution before the USPTO.

65.     Had Mr. Rothschild or the representatives associated with the filing and prosecution of the applications for the '190 Patent made the examiner aware of the undisclosed, material, non-cumulative prior art in Mr. Rothschild's possession, the examiner would not have allowed the independent claims of the '190 Patent to issue.

66.     Mr. Rothschild and/or the representatives associated with the filing and prosecution of the application for the '190 Patent intended to deceive the USPTO by intentionally failing to disclose the BarPoint system, the Rothschild Patents, and the full capabilities of the prior art barcode scanning applications identified in the specification, in order to recapture patent rights to subject matter Mr. Rothschild no longer controlled.

## **PRAYER FOR RELIEF**

WHEREFORE, Glanbia asks this Court to enter judgment in Glanbia's favor and against Symbology by granting the following relief:

a)   a declaration that the '190 Patent is invalid;

b)   a declaration that Glanbia does not infringe, under any theory, any valid claim of the '190 Patent that may be enforceable;

c)   a declaration that the '190 Patent is unenforceable;

d)   a declaration the Symbology take nothing by its First Amended Complaint;

e)   judgment against Symbology and in favor of Glanbia;

f)   dismissal of the First Amended Complaint with prejudice;

g)   a finding that this action is an exceptional case under 35 U.S.C. § 285 and an award to Glanbia of its costs and attorneys' fees incurred in this action; and

h)   further relief as the Court may deem just and proper.

## **JURY DEMAND**

Glanbia hereby demands trial by jury on all issues.

Dated: June 12, 2019                                FISH & RICHARDSON P.C.


                                          By: */s/ Jeremy D. Anderson*
                                              Jeremy D. Anderson (#4515)
                                              222 Delaware Avenue, 17th Floor
                                              Wilmington, Delaware 19801
                                              (302) 652-5070 (Telephone)
                                              (302) 652-0607 (Facsimile)
                                              janderson@fr.com

                                              Neil J. McNabnay
                                              Ricardo J. Bonilla
                                              Theresa M. Dawson
                                              Rodeen Talebi
                                              1717 Main Street, Suite 5000
                                              Dallas, Texas 19001
                                              (214) 747-5070 (Telephone)
                                              (214) 747-2091 (Facsimile)
                                              mcnabnay@fr.com;
                                              rbonilla@fr.com;
                                              tdawson@fr.com
                                              rtalebi@fr.com

                                              ATTORNEYS FOR DEFENDANT GLANBIA
                                              PERFORMANCE NUTRITION (MANUFACTURING),
                                              INC. D/B/A OPTIMUM NUTRITION, INC.