**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| **SYMBOLOGY INNOVATIONS LLC,** | |
| Plaintiff, | |
| v. | C.A. No. 1:19-cv-00881-MN |
| **GLANBIA PERFORMANCE NUTRITION (MANUFACTURING), INC. d/b/a OPTIMUM NUTRITION, INC.,** | TRIAL BY JURY DEMANDED |
| Defendant. | |

**PLAINTIFF SYMBOLOGY INNOVATIONS LLC'S OPPOSITION TO DEFENDANT
GLANBIA PERFORMANCE NUTRITION (MANUFACTURING), INC.'S
MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**

OF COUNSEL:

Eugenio J. Torres-Oyola
USDC No. 215505
Jean G. Vidal-Font
USDC No. 227811
FERRAIUOLI LLC
221 Plaza, 5th Floor
221 Ponce de León Avenue
San Juan, PR 00917
Telephone: (787) 766-7000
Facsimile: (787) 766-7001
Email: etorres@ferraiuoli.com
Email: jvidal@ferraiuoli.com

Timothy Devlin (No. 4241)
DEVLIN LAW FIRM LLC
1526 Gilpin Avenue
Wilmington, DE 19806
Telephone: (302) 449-9010
Facsimile: (302) 353-4251
tdevlin@devlinlawfirm.com

***ATTORNEYS FOR PLAINTIFF
SYMBOLOGY INNOVATIONS LLC***

Table of Contents

I.    NATURE AND STAGE OF THE PROCEEDINGS ..............................................................1

II.   SUMMARY OF THE ARGUMENT ................................................................................1

III.  THE PATNET-IN-SUIT.................................................................................................2

IV.   APPLICABLE LAW .......................................................................................................4

    A.  Motion to Dismiss for Failure to State a Claim .................................................4

    B.  Patent Eligibility under 35 U.S.C. § 101 ...........................................................5

    C.  Burden of proof of patent invalidity..................................................................8

V.    ARGUMENT....................................................................................................................8

    A.  The Patent-in-Suit are directed to Patent Eligible Subject Matter .....................8

        a)  Step 1: The Asserted Claim is not drawn to an abstract idea ..........................9

        b)  Step 2: Claim 1 recites an inventive concept...............................................14

        c)  The Remaining Claims are not Directed to an Abstract Idea.......................17

        d)  The Claims Do Not Pose a Disproportionate Risk of Preemption ...............17

VI.   CONCLUSION ...............................................................................................................18

Table of Authorities

*01 Communique Lab., Inc. v. Citrix Sys., Inc.,*
  151 F. Supp. 3d 778, 787 (N.D. Ohio 2015)........................................................................8

*Aatrix Software, Inc. v. Green Shades Software, Inc.,*
  882 F.3d 1121 (Fed. Cir. 2018).......................................................................................2

*Alice Corp. Pty. v. CLS Bank Int'l,*
  134 S.Ct. 2347, 2354 (2014) ......................................................... 5, 6, 7, 9, 10, 15

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ........................................................................................................7

*Association for Molecular Pathology v. Myriad Genetics, Inc.,*
  133 S.Ct. 2107, 2116 (2013) ..........................................................................................5

*Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC,*
  827 F.3d 1341, 1352 (Fed. Cir. 2016) .....................................4, 5, 7, 8, 16, 17, 18

*Bell Atlantic Corp. v. Twombly,*
  550 U.S. 544, 555 (2007).................................................................................................4

*Bilski v. Kappos,*
  561 U.S. 593 (2010) ........................................................................................................6

*California Inst. of Tech. v. Hughes Commc'ns Inc.,*
  59 F. Supp. 3d 974, 994 (C.D. Cal. 2014) ..............................................................8

*Chamberlain Grp., Inc. v. Linear LLC,*
  114 F. Supp. 3d 614 (N.D. Ill. 2015)...........................................................................6

*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n,*
  776 F.3d 1343 (Fed. Cir. 2014).................................................................................11, 12

*CyberSource Corp. v. Retail Decisions, Inc.,*
  654 F.3d 1366 (Fed.Cir.2011) ...................................................................................6, 9

*DataTern, Inc. v. Microstrategy, Inc.,* No. CV 11-11970-FDS,
  2015 WL 5190715 (D. Mass. Sept. 4, 2015) ............................................................8

*DDR Holdings, LLC v. Hotels.com, L.P.,*
  773 F.3d 1245 (Fed. Cir. 2014)..................................................... 6, 7, 14, 15

*Enfish, LLC v. Microsoft Corp.,*
  822 F.3d 1327 (2016) ............................................................................................passim

*Front Row Techs., LLC v. NBA Media Ventures, LLC,*
  2016 WL 5404094 (D.N.M. Aug. 30, 2016)....................................................................8

*Gottschalk v. Benson,*
  409 U.S. 63 (1972) ......................................................................................................6

*In re Bill of Lading Transmission & Processing Sys. Patent Lit.,*
  681 F.3d 1323 (Fed. Cir. 2012)....................................................................................4

*In re TLI Commc'ns LLC Patent Litig.,*
  823 F.3d 607 (Fed. Cir. 2016)......................................................................................6

*McRO, Inc. v. Bandai Namco Games Am. Inc.,*
  2016 WL 4896481 (Fed. Cir. Sept. 13, 2016)...........................................................6, 7

*Microsoft Corp. v. i4i Ltd. P'ship,*
  564 U.S. 91 (2011) ..................................................................................................8, 17

*Perdiemco, LLC v. Industrack LLC,*
  2016 WL 5719697 (E.D. Tex. Sept. 21, 2016) .........................................................7, 15

*RecogniCorp, LLC v. Nintendo Co.,*
  855 F.3d 1322 (Fed. Cir. 2017) ...............................................................................12, 13

*Secured Mail Solutions LLC v. Universal Wilde, Inc.,*
  873 F.3d 905 (Fed. Cir. 2017) .................................................................................13, 14

*Wolf v. Capstone Photography, Inc.,*
  2014 WL 7639820 (C.D. Cal. Oct. 28, 2014)................................................................8

**Statutes**

35 U.S.C. § 101.............................................................................................................passim

35 U.S.C. § 282..................................................................................................................8

35 U.S.C. § 271.................................................................................................................17

**Rules**

Rule 12(b)(6) of the Federal Rules of Civil Procedure .......................................................1, 4, 5

## I.   NATURE AND STAGE OF THE PROCEEDINGS

Symbology Innovations LLC's ("SI") filed this lawsuit on May 10, 2019 alleging the infringement U.S. Patent Nos. 8,936,190 (the "'190 patent" or the "Patent-in-Suit"). In response, Glanbia Performance Nutrition (Manufacturing), Inc. d/b/a Optimum Nutrition, Inc., ("Glanbia" or "Defendant") filed a Motion to Dismiss SI's complaint for failure to state claim under Federal Rule of Civil Procedure 12(b)(6) (the "Motion to Dismiss") on June 12, 2019.

## II.   SUMMARY OF THE ARGUMENT

Glanbia alleges that the Patent-in-Suit are purportedly invalid under Section 101 of the Patent Act. *See* D.I. 9 at p. 10. Particularly, Glanbia incorrectly contends that the claims are directed to the abstract idea of data recognition and retrieval. *Id*. A more thorough analysis of the Patent-in-Suit demonstrates that Glanbia is mistaken. Contrary to Glanbia's contentions, the claims of the Patent-in-Suit are directed to improvements in computer-related technology as discussed by the Federal Circuit in *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1334 (Fed. Cir. 2016). For example, the technology covered by the Patent-in-Suit improves the manner in which an electronic device processes symbology associated with an object through the performance of particular steps in order to provide information about the object to a user of the device. As such, the claims are not directed to an abstract idea; but rather, they address a specific issue within computer technology. In particular, the technology covered by the Patent-in-Suit enhanced existing portable devices with the information retrieval software applications described therein. Accordingly, the combination of steps and/or functionalities recited by the claims of the Patent-in-Suit resulted in the enhancement or improvement of electronic devices at the time of the invention.

Moreover, SI' Complaint includes properly pled allegations which, taken as true, directly affect the district court's patent eligibility analysis and prevent the court from resolving the

eligibility question as a matter of law. *See Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1126–27 (Fed. Cir. 2018) ("We have held that patentees who adequately allege their claims contain inventive concepts survive a § 101 eligibility analysis under Rule 12(b)(6).")

In view of the foregoing and the reasons set forth below the Court should deny Glanbia's Motion to Dismiss.

## III.    THE PATENT-IN-SUIT

The Patent-in-Suit discloses systems and methods for enabling a portable electronic device to retrieve information about an object—such as an article of commerce, product, service, or any item associated with various types of symbology—when the object's symbology is detected. In the Complaint, SI asserted Claim 1 of the Patent-in-Suit (the "Asserted Claim"), which is reproduced below:

> A method comprising:
> capturing a digital image using a digital image capturing device that is part of a portable electronic device;
>
> detecting symbology associated with an object within the digital image using a portable electronic device;
>
> decoding the symbology to obtain a decode string using one or more visual detection applications residing on the portable electronic device;
>
> sending the decode string to a remote server for processing;
>
> receiving information about the object from the remote server wherein the information is based on the decode string of the object;
>
> displaying the information on a display device associated with the portable electronic device.

The Patent-in-Suit, and in particular the Asserted Claim, addresses and solves a problem existent within computer technology at the time of the invention. Namely, improving the manner

in which an electronic device processes symbology associated with an object through the performance of particular steps and provides information about the object to a user of the device, thus making existing electronic devices at the time of the invention more dynamic and efficient. *See* '190 patent, 2:10-29. Moreover, the claimed system and method allows for the automatic detection of symbology; alerting a user whether symbology has been detected; and asking whether decoding of the symbology is desired. *See* '190 patent, 12:46-57. As noted in the specification, portable devices at the time of the invention could be "enhanced with software applications to enable information retrieval procedures as described in the present disclosures." *Id*. at 3:64-67. As such, the claimed methods and systems covered by the Patent-in-Suit addresses, and overcomes, a particular problem within computer technology. Defendant uses such method and system and as such, infringes the Patent-in-Suit.

It is worth noting that neither the parent patent nor the continuation applications claiming priority to the Patent-in-Suit (collectively, the "Patent Family"), were rejected under 35 U.S.C. § 101 as being directed to patent-ineligible subject matter during the corresponding prosecution. *See* Exhibits A-H – Office Actions for each member of the Patent Family. The claims covered by the Patent Family are generally similar in scope and were filed between 2010 and 2019. In total, the Patent Family comprises seven applications that have matured into patents; and one application that is currently pending. None were rejected as being directed to an abstract idea. This is compelling and persuasive evidence from the United States Patent and Trademark Office that the Patent-in-Suit are not directed to patent ineligible subject matter.

By focusing of individual components of the claims Glanbia contends that "[a]ll Claim 1 of the '190 Patent covers is a way to use a barcode to obtain information in order to access a webpage, consisting of nothing more than a set of basic ideas like capturing, detecting, decoding,

sending, receiving, and displaying data." *See* D.I. 9 at p. 11. As discussed below, however, taken together as an ordered combination, the claims recite an invention that is neither routine nor conventional.

## IV.   APPLICABLE LAW
### A.  Motion to Dismiss for Failure to State a Claim

Under Rule 12(b)(6), a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). That is, the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft*, 556 U.S. at 678). In other words, plausibility should not be treated as a "probability requirement at the pleading state; it simply calls for enough fact[s] to raise a reasonable expectation that discovery will reveal" the defendant is liable for the misconduct alleged. *In re Bill of Lading Transmission & Processing Sys. Patent Lit.*, 681 F.3d 1323, 1341 (Fed. Cir. 2012) (quoting *Twombly*, 550 U.S. at 556).

Patent eligibility can be determined at the Rule 12(b)(6) stage. *Aatrix Software*, 882 F.3d at 1125 (citations omitted). This is true only when there are no factual allegations that, taken as true, prevent resolving the eligibility question as a matter of law. As the Federal Circuit has explained, "plausible factual allegations may preclude dismissing a case under § 101 where, for example, 'nothing on th[e] record ... refutes those allegations as a matter of law or justifies dismissal under Rule 12(b)(6).'" *FairWarning IP, LLC v. Iatric Sys., Inc.*, 839 F.3d 1089, 1097 (Fed. Cir. 2016) (quoting *Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d

4

1341, 1352 (Fed. Cir. 2016)). If there are claim construction disputes at the Rule 12(b)(6) stage, the court must proceed by adopting the non-moving party's constructions, *Bascom*, 827 F.3d at 1352; or the court must resolve the disputes to whatever extent is needed to conduct the § 101 analysis, which may well be less than a full, formal claim construction. *Aatrix Software*, 882 F.3d at 1125 (citations omitted).

### B.  Patent Eligibility under 35 U.S.C. § 101

   Section 101 of the Patent Act defines the subject matter eligible for patent: "Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title." *See* 35 U.S.C. § 101. The judicially recognized exceptions from this provision are for "[l]aws of nature, natural phenomena, and abstract ideas." *Alice Corp. Pty. v. CLS Bank Int'l*, 134 S.Ct. 2347, 2354 (2014) (citing *Association for Molecular Pathology v. Myriad Genetics, Inc.*, 133 S.Ct. 2107, 2116 (2013)). These exceptions represent "the basic tools of scientific and technological work." *Alice,* 134 S.Ct. at 2354 (quoting *Ass'n for Molecular Pathology*, 133 S.Ct. at 2116). The rationale behind these exceptions is "one of pre-emption" grounded on the "concern that patent law not inhibit further discovery by improperly tying up the future use of these building blocks of human ingenuity." *Id.* However, the Supreme Court has cautioned unequivocally that "we tread carefully in construing this exclusionary principle lest it swallow all of patent law" because "[a]t some level, all inventions ... embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas." *Id.*

   In *Alice*, the Supreme Court set forth a two-part test for patent eligibility. *Id.* at 2355. First, the court determines whether the claims at issue are directed towards an abstract idea. *Id*. If so,

then the court asks "what else is there in the claims before us?" *Id.* To answer the question, the court considers "the elements of each claim both individually and as an ordered combination to determine whether the additional elements transform the nature of the claim into a patent-eligible application." *Id.* This second step is the search for an "inventive concept," or some element or combination of elements sufficient to ensure that the claim in practice amounts to "significantly more" than a patent on an ineligible concept. *Id.*; *see also DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1255 (Fed. Cir. 2014).

In determining whether the claims are directed to an abstract idea, the Supreme Court has recognized, that "fundamental economic practice[s]," *Bilski v. Kappos*, 561 U.S. 593, 611 (2010), "method[s] of organizing human activity," *Alice*, 134 S.Ct. at 2356, and mathematical algorithms, *Gottschalk v. Benson*, 409 U.S. 63, 64 (1972), are abstract ideas. *See also*, *DDR Holdings, LLC*, 773 F.3d at 1256. Courts have also found that processes that can be "performed mentally" or that are "equivalent of human mental work" are directed to abstract ideas. *See CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1373 (Fed.Cir.2011); *see also Chamberlain Grp., Inc. v. Linear LLC*, 114 F. Supp. 3d 614, 626 (N.D. Ill. 2015). At this step, "the claims are considered in their entirety to ascertain whether their character as a whole is directed to excluded subject matter." *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1312 (Fed. Cir. 2016) (citing *Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1346 (Fed. Cir. 2015)).

In *McRO* the Federal Circuit unequivocally stated: "We have previously cautioned that courts must be careful to avoid oversimplifying the claims by looking at them generally and failing to account for the specific requirements of the claims." *Id.* at *7 (citing *In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 611 (Fed. Cir. 2016)). Importantly, the "mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention" but

this is not "a license to delete all computer-related limitations from a claim and thereby declare it abstract." *Perdiemco, LLC v. Industrack LLC*, No. 2:15-CV-1216-JRG-RSP, 2016 WL 5719697, at *5 (E.D. Tex. Sept. 21, 2016), report and recommendation adopted, No. 2:15-CV-727-JRG, 2016 WL 5475707 (E.D. Tex. Sept. 29, 2016) (quotations and citations omitted). Importantly, claims are not directed to an abstract idea if the claimed subject matter does not preempt the use of the abstract idea on the Internet or on generic computer components performing conventional activities. *Bascom*, 827 F.3d at 1352.

Similarly, claims "purport[ing] to improve the functioning of the computer itself," or "improv[ing] an existing technological process" are not drawn to abstract ideas, *Alice*, 134 S.Ct. at 2358-59; *see also Enfish*, 822 F.3d at 1335. Additionally, the Federal Circuit has recognized that patent claims are not directed to an abstract idea where "the focus of the claims is on the specific asserted improvement in computer capabilities ..., [rather than] on a process that qualifies as an 'abstract idea' for which computers are invoked merely as a tool." *Enfish*, 822 F.3d at 1336. "If the claims are not directed to an abstract idea, the inquiry ends. *McRO, Inc. v. Bandai Namco Games Am. Inc.*, supra.

At *Alice* step two, courts determine whether the claims encompass "significantly more" than the abstract idea. At this step, courts also look at whether the claims "merely recite the performance of some business practice known from the pre-Internet world along with the requirement to perform it on the Internet" or whether "the claimed solution is necessarily rooted in computer technology in order to overcome a problem specifically arising in the realm of computer networks." *DDR Holdings*, LLC, 773 F.3d at 1257.

In other words, even if the claims are directed to abstract concepts they may still be patent-eligible when the claim limitations "are not necessary or obvious tools" that pre-empt or preclude

7

the use of other solutions in the technological field. *California Inst. of Tech. v. Hughes Commc'ns Inc.*, 59 F. Supp. 3d 974, 994 (C.D. Cal. 2014). Furthermore, "[t]he inventive concept inquiry requires more than recognizing that each claim element, by itself, was known in the art." *Bascom*, 827 F.3d at 1350. That is, "an inventive concept can be found in the non-conventional and non-generic arrangement of known, conventional pieces." *Id.*

## C. Burden of proof of patent invalidity

Patents are entitled to a presumption of validity. *See* 35 U.S.C. § 282. Pursuant to the Patent Act, the party asserting the invalidity of a patent or any claim thereof bears the burden of proof. *Id.* For this reason, a party arguing that a patent claims ineligible subject matter under 35 U.S.C. § 101 must prove this by clear and convincing evidence. *See Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 95 (2011); *see also*, *Wolf v. Capstone Photography, Inc.*, No. 2:13-CV-09573, 2014 WL 7639820, at *5 (C.D. Cal. Oct. 28, 2014) ("[P]rior to claim construction, a patent claim can be found directed towards patent ineligible subject matter if the only plausible reading of the patent must be that there is clear and convincing evidence of ineligibility.") (quotations and citations omitted); *DataTern, Inc. v. Microstrategy, Inc.*, No. CV 11-11970-FDS, 2015 WL 5190715, at *7 (D. Mass. Sept. 4, 2015); *01 Communique Lab., Inc. v. Citrix Sys., Inc.*, 151 F. Supp. 3d 778, 787 (N.D. Ohio 2015); *Front Row Techs., LLC v. NBA Media Ventures, LLC*, No. CIV 10-0433 JB/SCY, 2016 WL 5404094, at *32 (D.N.M. Aug. 30, 2016).

## V. ARGUMENT

### A. The Patent-in-Suit are directed to Patent Eligible Subject Matter

Glanbia incorrectly argues that the Asserted Claim is purportedly invalid under § 101. *See* D.I. 9 at p.11. As discussed below, however, the Patent-in-Suit is directed to improvements in computer-related technology and, as such, is not directed to an abstract idea.

8

### a) Step 1: The Asserted Claim is not drawn to an abstract idea

Glanbia contends that Claim 1 of the '190 Patent is purportedly directed to the abstract idea of data recognition and retrieval. *Id*. In particular, Glanbia argues that that the claims of the '190 Patent are directed to an unpatentable, abstract idea because they purportedly "claim nothing more than the 'longstanding,' 'routine,' and 'conventional' concept of data recognition and retrieval." *Id*. This argument, however, oversimplifies the technology covered by the Patent-in-Suit. Under the two-part test for determining patent eligibility a court must "first determine whether the claims at issue are directed to a patent-ineligible concept." *Alice*, 134 S.Ct. at 2355. If that threshold determination is met, the court must "consider the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application." *Id*.

It must be noted that the Patent-in-Suit is not directed to the type of subject matter that has been consistently invalidated by courts under 35 U.S.C. § 101. For instance, the Asserted Claim is not directed to a fundamental economic practice, a method of organizing human activity, or a mathematical algorithm. Moreover, the limitations recited in the Asserted Claim cannot be performed mentally and are not the "equivalent of human mental work." *See CyberSource Corp.*, 654 F.3d at 1373. For example, a human mind cannot decode symbology associated that is with an object in order to obtain a decode string using one or more visual detection applications residing on the portable electronic device; send the decode string to a remote server for processing; and receive information about the object from the remote server wherein the information is based on the decode string of the object. Instead, the Patent-in-Suit are directed to solving a problem within computer technology at the time of the invention which cannot be done by a person. As previously noted, the subject matter claimed by the Patent-in-Suit improves the manner in which an electronic

device automatically retrieves and decodes information from a symbol that is associated with an object in order for said information to be displayed on the electronic device. *See* '190 patent, 2:10-29.

Glanbia contends the Asserted Claim is directed to capturing, detecting, decoding, sending, receiving, and displaying data, as performed by known technologies. *See* D.I. 9 at p. 12. However, such characterization is too broad and oversimplifies the claims since the claims are not directed to any of those actions individually. Such oversimplification omits the combination of steps that allow an electronic device to automatically detect a symbol and decode it into information about an object that is subsequently displayed on the device, as recited in Claim 1. As noted by the U.S. Supreme Court in *Alice*, describing the claims at such a high level of abstraction and untethered from the language of the claims all but ensures that the exceptions to § 101 swallow the rule. *See Alice*, 134 S.Ct. at 2354 (noting that "we tread carefully in construing this exclusionary principle [of laws of nature, natural phenomena, and abstract ideas] lest it swallow all of patent law").

Furthermore, as explained by the Federal Circuit "the 'directed to' inquiry … cannot simply ask whether the claims involve a patent-ineligible concept, because essentially every routinely patent-eligible claim involving physical products and actions involves a law of nature and/or natural phenomenon…" *Enfish*, 822 F.3d at 1335. "Rather, the 'directed to' inquiry applies a stage-one filter to claims, considered in light of the specification, based on whether 'their character as a whole is directed to excluded subject matter.'" *Id*. In *Enfish*, the Federal Circuit also noted that claims are not directed to an abstract idea if "the focus of the claims is on the specific asserted improvement in computer capabilities …, [rather than] on a process that qualifies as an 'abstract idea' for which computers are invoked merely as a tool." *Id*. at 1336. Applying that test, the Federal Circuit rejected a § 101 challenge because the claims at issue focused on a specific

improvement—i.e., a particular database technique—in how computers could carry out one of their basic functions of storage and retrieval of data.

Here, the Asserted Claim does not merely call for a device that captures an image or detects a symbol. Rather, the Asserted Claim requires an electronic device to detect symbology within an image; send symbology information to the appropriate applications residing on the electronic device for decoding; decode the symbology to obtain a decode string; send the decode string to a server configured to identify one or more objects associated with the symbology; determine the object associated with the symbology using the decode string; and then gather information about that object in order to display it to the user of the electronic device. *See* '190 patent, 3:25-41. As noted in the specification for the Patent-in-Suit, existing portable devices could be enhanced with software applications to enable information retrieval procedures as described in the Patent-in-Suit. *Id*. at 3:64-67. Accordingly, the combination of the aforementioned steps and/or functionalities— as embodied in Claim 1—resulted in the enhancement or improvement of electronic devices at the time of the invention. In other words, it made the existing electronic devices more dynamic and efficient. Thus, through the performance of the particular steps recited in Claim 1, the Patent-in-Suit improves the manner in which an electronic device processes symbology associated with an object and provides information about the object to a user of the device. Therefore, the Patent-in-Suit represents an improvement to computer capabilities and is note directed to an abstract idea.

Glanbia further contends that other courts have found similar claims to be patent ineligible. *See* D.I. 9 at pp. 13-16. The cases discussed by Glanbia, however, are distinguishable from the case at bar. For example, Glanbia relies on *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343, 1347 (Fed. Cir. 2014) to contend that the Asserted Claim is directed to an abstract idea. *See* D.I. 9 at p. 13. In that case the Federal Circuit agreed with the

11

district court that the claims at issue were "drawn to the abstract idea of 1) collecting data, 2) recognizing certain data within the collected data set, and 3) storing that recognized data in a memory" and indicated that the "concept of data collection, recognition, and storage [was] undisputedly well-known […]" since "humans [had] always performed these functions." *Id*. After all, banks had "for some time, reviewed checks, recognized relevant data such as the amount, account number, and identity of account holder, and stored that information in their records." *Id*. As such, the Federal Circuit concluded that the claims were "drawn to the basic concept of data recognition and storage." *Id*. In the case at bar however, the Asserted Claim is not directed to "functions" that have always been performed by humans or banks as in *Content Extraction*. For example, humans cannot automatically detect symbology associated with an object within an image, decode the symbology to obtain a decode string, send the decode string to a remote server for processing, receive information about the object from the server based on the decode string of the object and display the information, as recited in the Asserted Claim. In other words, unlike banks reviewing checks and storing the information for their records (i.e., data recognition and storage), the claimed steps are not "functions" that have been historically performed by humans. As such, the claims are not directed to an abstract idea as Glanbia contends.

Moreover, Glanbia relies on *RecogniCorp, LLC v. Nintendo Co.*, 855 F.3d 1322 (Fed. Cir. 2017), cert. denied, 138 S.Ct. 672, 199 L. Ed. 2d 535 (2018) to support its contention that the Patent-in-Suit are purportedly directed to an abstract idea. *See* D.I. 9 at pp. 13-14. In that case the Federal Circuit concluded that the claim at issue was directed to the abstract idea of encoding and decoding image data because it merely claimed a method whereby a user displayed images on a first display, assigned image codes to the images through an interface using a mathematical formula, and then reproduced the image based on the codes. *RecogniCorp*, 855 F.3d at 1326.

12

Particularly, the Federal Circuit noted that "a method whereby a user starts with data, codes that data using 'at least one multiplication operation,' and ends with a new form of data" as required by the claim at issue, was directed to an abstract idea. *Id*. at 1327. Here, however, the claims are not merely directed to encoding data using a multiplication operation in order to obtain a new form of data. Unlike *RecogniCorp*, the Asserted Claim is directed to a method that improves the functioning of a computer. As discussed above, thanks to the steps recited in Claim 1, the Patent-in-Suit improved the manner in which an electronic device at the time of the invention could process symbology associated with an object and provide information about the object to a user of the electronic device. As such, the claims at issue are distinguishable from the claim in *RecogniCorp*.

Furthermore, Glanbia relies on *Secured Mail Solutions LLC v. Universal Wilde, Inc.*, 873 F.3d 905 (Fed. Cir. 2017) to support its erroneous contention that the Patent-In-Suit does not embrace patent eligible subject matter. *See* D.I. 9 at pp. 14-15. In that case the patents at issue merely involved methods in which a sender affixed an identifier on the outer surface of a mail object (e.g., envelope or package) and, as such, the Federal Circuit agreed with the district court's analysis that the claims were directed to an abstract idea. *Id*. at 907-09. Furthermore, the Federal Circuit noted that the claims were not directed to an improvement in computer functionality because, for example, the claims were not directed to a new barcode format, an improved method of generating or scanning barcodes, or similar improvements in computer functionality and that the claims merely generically provided for the encoding of various data onto a mail object but did not set out how this is to be performed. *Id*. at p. 910. Here, however, the Asserted Claim does not require affixing an identifier on the outer surface of an envelope or package or merely encoding data onto a mail object; rather the Asserted Claim sets out a method in which information is

presented about an object on a portable electronic device after the performance of specific steps. Additionally, Glanbia argues that the Claim 1 merely claims a desired result without describing any specific roadmap for doing so. *See* D.I. 9 at p. 16. However, the Asserted Claim requires the performance of particular steps before information is displayed on an electronic device; steps which as discussed above, result in the improvement and enhancement of portable devices at the time of the invention. As such *Secured Mail* is distinguishable from the case at bar.

Lastly, it should be noted that the elements recited in the Asserted Claim, both individually and as an ordered combination, must be considered to determine whether the claims recite an invention that is not merely routine or conventional. *See DDR Holdings*, 773 F.3d at 1259. Here, the ordered combination of the steps recited in the Asserted Claim requires the performance of steps, which as discussed above, result in the improvement and enhancement of portable devices at the time of the invention. Thus, the Asserted Claim is not directed to an abstract idea.

Since the Asserted Claim focuses on a specific improvement to computer capabilities the Patent-in-Suit is not directed to an abstract idea as Glanbia would have this Court believe. *See Enfish*, 822 F.3d at 1335-39 (In which the Court asked whether the focus of the claims is on the specific asserted improvement in computer capabilities or instead on a process that qualifies as an "abstract idea" for which computers are invoked merely as a tool.) As such, Glanbia contention that the Patent-in-Suit is directed to an abstract idea must be rejected.

**b) Step 2: Claim 1 recites an inventive concept**

In addition, Glanbia's Motion to Dismiss fails because the claims recite an inventive concept. As previously noted, at this step courts also look at whether the claims "merely recite the performance of some business practice known from the pre-Internet world along with the requirement to perform it on the Internet" or whether "the claimed solution is necessarily rooted

in computer technology in order to overcome a problem specifically arising in the realm of computer networks." *DDR Holdings, LLC*, 773 F.3d at 1257.

The Asserted Claim is not drawn to a business practice known from the pre-Internet world along with a requirement to perform it on the Internet. On the contrary, Claim 1 represents an improvement to computer capabilities, as previously discussed. Glanbia argues that the Asserted Claim does not recite an inventive concept. *See* D.I. 9 at pp. 16-19. Particularly, Glanbia argues that each step recited in the Asserted Claim is described only at a high level of generality and that to accomplish these steps the Asserted Claim merely requires the use of known "portable electronic device[s]," "visual detection applications," and a "remote server." *Id*. However, the fact that some of these devices may be known does not represent "a license to delete all computer-related limitations from a claim and thereby declare it abstract." *Perdiemco, LLC*, supra (quotations and citations omitted). Glanbia forgets that the *Alice* Court advised that it "tread carefully in construing this exclusionary principle lest it swallow all of patent law." *Alice*, 134 S.Ct. at 2354. Under Glanbia's overbroad and general interpretation, nearly all inventions would be invalid under 35 U.S.C. § 101.

Furthermore, Glanbia's analysis is improper because it focuses on the individual components recited in the Asserted Claim to reach the erroneous conclusion that the claimed components do not improve the functioning of the computer itself. *See* D.I. 9 at pp. 17-18. In particular, Glanbia's focus on individual components fails to consider the elements of the claims as an ordered combination. Individual elements when viewed on their own may not appear to add significantly more, but when viewed in combination may amount to significantly more than any purported abstract idea. *See Alice*, 134 S.Ct. at 2355. Viewed as a whole or as an ordered combination, the Asserted Claims recite a "specific improvement to the way computers operate".

*Enfish*, 822 F.3d at 1336. As discussed above, through the performance of the particular steps recited in the Asserted Claim, the Patent-in-Suit improves the manner in which an electronic device processes symbology associated with an object and provides information about the object to a user of the device. Thus, contrary to Glanbia's contention the Patent-in-Suit improves the functioning of a computer itself.

As noted by the Federal Circuit in *Bascom*, the inventive concept inquiry requires more than recognizing that each claim element, by itself, was known in the art. *See Bascom*, 827 F.3d at 1350. The claims in that case were directed to filtering internet content using a remote, customizable filter. The Federal Circuit agreed with the district court that that filtering content was an abstract idea because it was a longstanding, well-known method of organizing human behavior. *Id*. at 1348. However, the Federal Circuit found the claims eligible under Step 2, stating that they recited a non-conventional and non-generic ordered combination of known, conventional pieces. *Id*. at 1350. The Federal Circuit characterized the inventive concept as "the installation of a filtering tool at a specific location, remote from the end-users, with customizable filtering features specific to each end user." *Id*. In particular, Federal Circuit noted that "by taking a prior art filter solution […] and making it more dynamic and efficient […], the claimed invention represented a 'software-based invention[ ] that improve[s] the performance of the computer system itself.'" *Id*. at 1351. Here, Glanbia indicates that the "applicant's own characterizations demonstrate that the claimed components do not 'improve the functioning of the computer itself'". *See* D.I. 9 at p. 17. This is false. As explained above, through the performance of the particular steps recited in Claim 1, the Patent-in-Suit improves the manner in which an electronic device processes symbology associated with an object and provides information about the object to a user of the device, thus making existing electronic devices at the time of the invention more dynamic and efficient.

Therefore, as in *Bascom*, the specific method recited in the Asserted Claim cannot be said to be conventional or generic; but rather, to an inventive concept.

### c) The Remaining Claims are not Directed to an Abstract Idea

Glanbia argues in conclusory fashion that the remaining claims of the Patent-in-Suit are also directed to the abstract idea of data recognition and retrieval. *See* D.I. 9 at pp. 19-21. But aside from providing legal conclusions devoid of any support—such as indicating that the remaining claims only recite insignificant pre- or post-solution activity—Glanbia does not show by clear and convincing evidence that all remaining claims are directed to an abstract idea. *See Microsoft Corp.*, 564 U.S. at 95; *see also*, *Wolf*, 2014 WL 7639820, at *5 ("[P]rior to claim construction, a patent claim can be found directed towards patent ineligible subject matter if the only plausible reading of the patent must be that there is clear and convincing evidence of ineligibility.") Thus, Glanbia's argument as to the remaining claims must be stricken from their Motion to Dismiss for inadequate pleading.

### d) The Claims Do Not Pose a Disproportionate Risk of Preemption

Glanbia further argues that the Patent-in-Suit risk preempting "all automated methods or systems for recognizing a pattern, like a barcode, and retrieving data based on that." *See* D.I. 9 at p. 21. Glanbia's argument exaggerates the scope of the Patent-in-Suit. The Patent-in-Suit would only preempt someone in the United States from performing *each and every step* of the claimed method. After all that is the right that was granted under the patent statute. *See* 35 U.S.C. § 271. It would not preempt all methods of data retrieval or someone who only scanned or decoded a pattern, or someone who merely displayed information on a display device. In *Bascom* the Federal Circuit concluded that the claims at issue did not preempt all ways of filtering content on the Internet; rather, they recited a specific, discrete implementation of the abstract idea of filtering

17

content. *See Bascom*, 827 F.3d at 1350. In particular, there were no preemption concerns because the patent described how its particular arrangement of elements was technical improvement over prior art ways of filtering such content. *Id*. As explained above, through the performance of the particular method recited in Claim 1, the Patent-in-Suit improves the manner in which an electronic device processes symbology associated with an object and provides information about the object to a user of the device, thus making existing electronic devices at the time of the invention more dynamic and efficient. Thus, construed in favor of SI as they must be in this procedural posture, the claims of the Patent-in-Suit do not preempt the use of any purported abstract idea on generic computer components performing conventional activities. *See Bascom*, 827 F.3d at 1352.

In sum, Glanbia did not show by clear and convincing evidence that the Patent-in-Suit is invalid. Consequently, since the Asserted Claim is drawn to a patent-eligible inventive concept, Glanbia's Motion to Dismiss must be denied.

## VI.   CONCLUSION

The Court should deny the Motion to Dismiss because the Patent-in-Suit are not directed to an abstract idea, but rather represent an improvement to computer capabilities. Namely, improving the manner in which an electronic device processes symbology associated with an object through the performance of particular steps in order to provide information about the object to a user of the device, thus making existing electronic devices at the time of the invention more dynamic and efficient.

Thus, for the reasons set forth above, the Motion to Dismiss should be denied.

Dated: June 25, 2018

Respectfully Submitted,

DEVLIN LAW FIRM LLC

*/s/ Timothy Devlin*
Timothy Devlin (No. 4241)
1526 Gilpin Avenue
Wilmington, DE 19806
Telephone: (302) 449-9010
Facsimile: (302) 353-4251
tdevlin@devlinlawfirm.com


OF COUNSEL:

Eugenio J. Torres-Oyola
USDC No. 215505
Jean G. Vidal-Font
USDC No. 227811
FERRAIUOLI LLC
221 Plaza, 5th Floor
221 Ponce de León Avenue
San Juan, PR 00917
Telephone: (787) 766-7000
Facsimile: (787) 766-7001
Email: etorres@ferraiuoli.com
Email: jvidal@ferraiuoli.com

***ATTORNEYS FOR PLAINTIFF***
***SYMBOLOGY INNOVATIONS LLC***

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 25, 2019, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

<u>*/s/ Timothy Devlin*        </u>
Timothy Devlin